**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Randy Philip Rau,

                Plaintiff,

                                      Civ. No. 08-2451 (RHK/JJK)
                                      **MEMORANDUM OPINION
                                      AND ORDER**

v.

Michael David Roberts and
City of Minneapolis,

                Defendants.

Scott W. Swanson, Swanson Law Firm, PLLC, St. Paul, Minnesota, Paul Applebaum, Applebaum Law Firm, St. Paul, Minnesota, for Plaintiff.

Sara J. Lathrop, C. Lynne Fundingsland, Minneapolis City Attorney's Office, Minneapolis, Minnesota, for Defendant City of Minneapolis.

**INTRODUCTION**

This action arises out of an alleged assault perpetrated by Defendant Michael David Roberts, a police officer employed by Defendant City of Minneapolis (the "City"), against Plaintiff Randy Phillip Rau. Presently before the Court is the City's Motion to Dismiss. For the reasons set forth below, the Court will deny the Motion.

**BACKGROUND**

Rau owns a car wash and gas station called "The Perfect Carwash" in Brooklyn Center, Minnesota. (Compl. ¶ 9.) On July 11, 2006, Roberts traveled to The Perfect

Carwash with his wife, in his personal car, to obtain gas.  (Id. ¶ 11.)  He was wearing his police-issued uniform, badge, utility belt, and firearm at the time.  (Id.)

Roberts purchased $25 worth of gas but mistakenly believed that the fuel was not pumped into his car.  (Id. ¶¶ 12-13.)  He went inside the building to complain to a clerk, who advised Rau of the problem.  (Id. ¶ 14.)  Rau spoke with the clerk and then with Roberts, informing him that the gas had, in fact, been pumped into his car.  (Id.)  Roberts, however, continued to dispute that he had actually received any gas.  (Id.)  He then went back to his car, and Rau followed behind, intending "to show Roberts that he had received his gas by getting Roberts's vehicle started."  (Id. ¶ 15.)  When Rau moved toward the ignition of Roberts's car, however, Roberts threatened "to break Rau's neck if Rau touched the car."  (Id.)

Because Roberts continued protesting that he had not received any gas, Rau decided to remove the gas-pump nozzle from Roberts's car.  (Id.)  As he moved to do so, Roberts struck him with both fists, knocking him into the gas pump.  (Id. ¶ 16.)  Rau then went back into the building and called 911.  (Id.)  Roberts followed him and yelled "what the fuck are you calling the police for?  The police are already here!"  (Id. ¶ 17.)  Following a further exchange of words, Roberts stormed back out to his car.  (Id. ¶¶ 17-18.)

Rau, fearing that Roberts might leave the scene, went outside and wrote down Roberts's license-plate number, and then went back to the pump to ensure that the nozzle had been removed from Roberts's car.  (Id. ¶ 18.)  Seeing Rau, Roberts grabbed him by the shirt collar, spun him around, and slammed him into the car.  (Id. ¶ 19.)  Roberts then

threw Rau against his car a second time and punched Rau in the face, cutting his lip and chipping one of his teeth.  (Id.)  Rau went back into the building and called 911 again.  (Id.)

Rau later commenced the instant action, asserting three claims:  excessive force under 42 U.S.C. § 1983 against Roberts (Count 1), and battery (Count 2) and assault (Count 3) against both Roberts and the City.  The City now moves to dismiss Counts 2 and 3, arguing that it cannot be held vicariously liable for Roberts's actions as a matter of law.

## STANDARD OF DECISION

The recent Supreme Court case of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), sets forth the standard to be applied when evaluating a motion to dismiss under Rule 12(b)(6).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.  Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted).  Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 1968 (citation omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 1974.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from

3

those facts in the plaintiff's favor. Id. at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. at 1965 (citation omitted).

## ANALYSIS

The City argues that it cannot be liable here because the alleged assault and battery did not occur within the scope of Roberts's employment. Under Minnesota law, the City may be held responsible for Roberts's alleged torts under a *respondeat superior* theory, if they occurred within the scope of his employment. E.g., Frieler v. Carlson Mktg. Group, Inc., 751 N.W.2d 558, 583 (Minn. 2008); Schneider v. Buckman, 433 N.W.2d 98, 101 (Minn. 1988). This is true even for intentional torts like assault and battery, as long as Roberts's conduct was "foreseeable, related to and connected with acts otherwise within the scope of employment." Frieler, 751 N.W.2d at 583 (quoting Fahrendorff *ex rel.* Fahrendorff v. N. Homes, Inc., 597 N.W.2d 905, 910 (Minn. 1999)).

In support of its Motion, the City asserts that Roberts was off duty at the time of the altercation, pointing to the Brooklyn Center Police Department's Incident Report, which states that Roberts informed the responding officers that he was off duty. (See Def. Mem. at 2, 5-6.)[1] The City also notes that Roberts was in his own vehicle and was

---

[1] Rau objects to the Incident Report, arguing that it is beyond the pleadings and, in any event, is unauthenticated and inadmissible hearsay. (Mem. in Opp'n at 5-8.) The Court need not address these arguments, because it concludes that the claims against the City should not be dismissed even if the Incident Report is considered.

outside City limits when the alleged assault and battery occurred. (See id. at 5.) Accordingly, the City argues that the facts indisputably show that Roberts was not acting in the scope of his employment at the time of the incident.

But the City has overlooked the procedural posture of this case. The Court may not resolve fact disputes on a motion to dismiss, e.g., Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 663 (8th Cir. 2001), and whether an employee acted within the scope of his employment "is ordinarily a question of fact for the jury," Hentges v. Thomford, 569 N.W.2d 424, 427 (Minn. Ct. App. 1997) (citations omitted). Indeed, none of the cases cited by the City was decided on a motion-to-dismiss under Rule 12(b)(6). (See infra note 3.) At this juncture, the only question the Court must answer is whether Rau has pleaded sufficient facts "to state . . . claim[s] to relief that [are] plausible on [the] face" of the Complaint. Twombly, 127 S. Ct. at 1974. While the facts the City has alluded to, if true, tend to cast doubt that Roberts was acting in the scope of his employment when the alleged assault/battery occurred, there are sufficient facts pleaded in the Complaint to support the opposite conclusion.

Specifically, Rau has alleged that Roberts was in his police-issued uniform, wearing his badge and utility belt, and carrying his firearm when the incident took place. (Compl. ¶ 11.) More importantly, when Rau retreated into The Perfect Carwash to call 911, Roberts chased after him and yelled, "what the fuck are you calling the police for? The police are already here!" (Id. ¶ 17.) In the Court's view, this exclamation necessarily conveyed the impression that Roberts was acting as an on-duty police officer – that is, he enjoyed the same power and authority to act as any police officer who might

5

be dispatched in response to Rau's 911 call.  The Court concludes that these facts, which it must accept as true at this juncture, are sufficient to support the conclusion that Roberts was acting in the scope of his employment as a Minneapolis police officer when the incident occurred.[2]

The City argues that it cannot be liable because it was not foreseeable that Roberts would commit an assault while off duty.  (Reply Mem. at 14-22.)  As noted above, foreseeability is a key element in the scope-of-employment analysis.  E.g., Frieler, 751 N.W.2d at 583 (vicarious liability exists for employee's intentional tort if conduct was "foreseeable, related to and connected with acts otherwise within the scope of employment").  The City's argument, however, is unconvincing for three reasons.

First, the City incorrectly assumes that Roberts was off duty at the time of the incident, when the facts pleaded in the Complaint suggest otherwise.  Second, Minnesota cases intimate that the risk of assault by police officers is foreseeable.  See, e.g., Dawley v. Tuchek, Nos. A05-2143, A05-2174, 2006 WL 2053377, at *3 (Minn. Ct. App. July 25, 2006) ("[W]e recognize that as a matter of public policy, the power and authority granted to police officers may support broad imposition of respondeat superior liability for police misconduct.").  In the Court's view, it is foreseeable that police officers, who work in a high-paced and high-stress job, are armed, and are frequently involved in tense, face-to-face confrontations with criminals (and others), might commit assaults in the course of

---

[2] In addition, the Court notes that the Incident Report does not indisputably establish that Roberts was off duty at the time of the alleged assault.  The Report states only that Roberts *told the responding officers* that he was off duty; there is no independent verification of that fact contained in the Report.

their employment. Indeed, there exist legions of cases in which police officers used excessive force and/or committed assaults and batteries on innocent victims. Third, it is "long-standing precedent that for purposes of respondeat superior, the foreseeability of an employee's conduct is a question of fact to be analyzed based on the evidence presented in the particular case." Frieler, 751 N.W.2d at 583-84; accord Fahrendorff, 597 N.W.2d at 911 ("[I]t is a question of fact whether the employee's acts were foreseeable."). Accordingly, the foreseeability issue is not amenable to resolution at this juncture.[3]

At oral argument, the City asserted that, as a matter of public policy, it should not be responsible for Roberts's conduct because he was not performing duties for the City at the time of the assault. Frieler rejected a similar argument, noting that it is well established that an employee's actions "'need not be committed in furtherance of his employer's business to fall within the scope of his employment' for purposes of respondeat superior." 751 N.W.2d at 575 (quoting Fahrendorff, 597 N.W.2d at 910). The City also argued that it should not be held liable because Roberts was not authorized to commit assaults. Under that logic, however, an employer could inform its employees

---

[3] Nearly all the cases on which the City relies – specifically, M.Y. *ex rel.* J.Y. v. Special School District No. 1, 519 F. Supp. 2d 995 (D. Minn. 2007) (Doty, J.); Hudson v. City of Minneapolis, Civ. No. 04-3313, 2006 WL 752935 (D. Minn. Mar. 23, 2006) (Ericksen, J.); Murray *ex rel.* Murray v. United States, 258 F. Supp. 2d 1006 (D. Minn. 2003) (Montgomery, J.); Longen v. Federal Express Corp., 113 F. Supp. 2d 1367 (D. Minn. 2000) (Tunheim, J.); and Western National Mutual Insurance Co. v. United States, 964 F. Supp. 295 (D. Minn. 1997) (Doty, J.) – are distinguishable, as each was decided at summary judgment. Similarly, Primeaux v. United States, 181 F.3d 876 (8th Cir. 1999), was decided after a bench trial. Only Johnson v. United States, 534 F.3d 958 (8th Cir. 2008), addressed a motion to dismiss, but Johnson dealt with a motion to dismiss for lack of subject-matter jurisdiction, an issue for which a district court may consider facts beyond the pleadings. See id. at 962 (noting issue was decided based on undisputed facts). Yet, even Johnson recognized that "generally, whether an employee's actions are within the scope of [his] employment is a question of fact." Id. at 963.

that they are not authorized to commit tortious acts, and then fall back on that warning as a shield to prevent vicarious liability in all circumstances. Such a rule would severely undermine the purpose behind the vicarious-liability doctrine, which is premised not on "the fault of the employer, but from notions of public policy that an employer should have to bear liability for acts committed by its employees within the scope of their employment as a cost of doing business." Frieler, 751 N.W.2d at 574-75. Indeed, for this reason Minnesota courts have repeatedly rejected the notion that an employer cannot be held responsible for an employee's conduct "even when such conduct was illegal *or expressly prohibited by the employer*." Id. at 575 (emphasis added) (citing Fahrendorff, 597 N.W.2d at 912, and Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd., 329 N.W.2d 306, 311 (Minn. 1982)).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant City of Minneapolis's Motion to Dismiss (Doc. No. 4) is **DENIED**.

Date: January 21, 2009

                                                  s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge