# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Randy Philip Rau,

                Plaintiff,

                                      Civ. No. 08-2451 (RHK/JJK)
                                      **MEMORANDUM OPINION**
                                      **AND ORDER**

v.

Michael David Roberts and
City of Minneapolis,

                Defendants.

Scott W. Swanson, Swanson Law Firm, PLLC, St. Paul, Minnesota, Paul Applebaum, Applebaum Law Firm, St. Paul, Minnesota, for Plaintiff.

Gregory P. Sautter, Sara J. Lathrop, C. Lynne Fundingsland, Minneapolis City Attorney's Office, Minneapolis, Minnesota, for Defendant City of Minneapolis.

## INTRODUCTION

In this action, Plaintiff Randy Phillip Rau has sued Michael David Roberts, a police officer previously employed by the City of Minneapolis (the "City"), as well as the City, for injuries he sustained in an assault allegedly perpetrated by Roberts. Presently before the Court is the City's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion. In addition, the Court will dismiss the lone federal claim asserted against Roberts *sua sponte* and remand Rau's remaining state-law claims.

## BACKGROUND

The pertinent facts are undisputed. At all relevant times, Roberts was a Minneapolis police officer. (Sautter Decl. Ex. 2.) Rau owns a car wash and gas station called "The Perfect Carwash" in Brooklyn Center, Minnesota. (Rau Dep. Tr. at 5, 12.) On July 11, 2006, Roberts worked until 8:00 pm and then traveled to The Perfect Carwash with his wife, in his personal car, to obtain gas. (Sautter Decl. Ex. 2; id. Ex. 9 at 1; id. Ex. 11 at ¶¶ 6-16; Rau Dep. Tr. at 21; Stevens Dep. Tr. at 6; Wysocki Dep. Tr. at 20.)[1] He was wearing his police-issued uniform, badge, utility belt, and firearm at the time. (Rau Dep. Tr. at 28; Stevens Dep. Tr. at 34.)

Once at The Perfect Carwash, Roberts's wife placed the gas-pump nozzle into her fuel tank, went inside, and paid for $25 worth of gas. (Rau Dep. Tr. at 20-27.) She then returned to the vehicle, after which a dispute arose as to whether the gas had actually been dispensed. Roberts, who had been sitting in the passenger seat, exited the vehicle and complained to the cashier, Jason Stevens. (Id. at 26; Stevens Dep. Tr. at 6.) Because they were unable to resolve the dispute, Stevens decided to get Rau, who was in a back office. (Rau Dep. Tr. at 27; Stevens Dep. Tr. at 6.) Roberts told Rau, "I want my $25 or give me my fucking gas," although it is unclear whether that statement was made inside The Perfect Carwash or outside near the pumps. (Rau Dep. Tr. at 28; Stevens Dep. Tr. at

---

[1] Two points bear mentioning with respect to the Exhibits attached to the Declaration of Gregory Sautter, counsel for the City. First, Rau objects to certain of the Exhibits, and those objections are discussed in greater detail below. (See infra at 5-7.) Second, Exhibit 11, to which no objection has been made, is a copy of the City's Requests for Admissions served upon Roberts. According to the City, no response to those Requests has been served or filed. (See Sautter Decl. ¶ 13.) Accordingly, each of the Requests is deemed admitted, Fed. R. Civ. P. 36(a)(3), including that Roberts had (1) stopped working at 8:00 pm on the night in question and (2) traveled to the Perfect Carwash in his personal vehicle.

13.) Regardless, at some point Rau and Roberts were at the gas pumps next to Roberts's vehicle, at which time Rau intended to demonstrate that the gas had been pumped by starting Roberts's vehicle and checking the gas gauge. (Rau Dep. Tr. at 39; Stevens Dep. Tr. at 13-14.) As Rau moved to do so, Roberts warned him, "[Y]ou touch my fucking car and I'll break your neck." (Rau Dep. Tr. at 40; Stevens Dep. Tr. at 14.) When Rau retorted, "What's wrong with you?", Roberts again insisted, "I want my fucking gas or I want my $25." (Rau Dep. Tr. at 40-41.)

At this point, Rau told Roberts that if he wanted "his" gas he would have to call the Brooklyn Center police department, and Rau decided to remove the gas-pump nozzle from the gas tank of Roberts's vehicle. (Id. at 42.) When Rau told Roberts he was going to hang up the nozzle, Roberts said, "[D]on't touch my fucking car." (Id. at 42-43.) Undeterred, Rau moved toward the nozzle, at which point Roberts struck him with both fists, knocking him off his feet and causing him to hit the gas pump and its guard rail. (Id.; Stevens Dep. Tr. at 14.) Rau then went inside The Perfect Carwash and called 911; Roberts followed behind, exclaiming, "[W]hat are you calling the fucking police for? The police are here." (Rau Dep. Tr. at 43-45; Stevens Dep. Tr. at 14-15.) Roberts then went back outside to the pump. (Rau Dep. Tr. at 46.)

After hanging up with the 911 operator, Rau – concerned that Roberts might drive off with the gas-pump nozzle still in his tank, something others had done in the past – decided to return to the pump and remove the nozzle from the vehicle. (Id. at 46-49; Stevens Dep. Tr. at 20.) As he approached, he told Roberts he was going to remove the nozzle, to which Roberts responded, "[D]on't touch my fucking car." (Rau Dep. Tr. at

3

49-51.)  Without warning, Roberts then grabbed Rau, slammed him against the back of the car, dropped him, picked him up, and punched him in the face.  (Id. at 52-57; Stevens Dep. Tr. at 8, 20-21.)  According to Rau, Roberts exclaimed, "I am so fucking – for 32 years I have dealt with you white, mother fuckin' honkies and I'm tired of it," just before he struck Rau.  (Rau Dep. Tr. at 52.)  A witness standing nearby who saw what had transpired asked Roberts whether he was on duty; Roberts first answered yes, but when asked again answered no.  (Wysocki Dep. Tr. at 18-22.)

Rau then ran back inside and called 911 a second time.  (Rau Dep. Tr. at 56-57.)  Brooklyn Center police arrived a short time later, but no arrests were made.

Rau later commenced the instant action in Hennepin County District Court.  With Roberts's consent, the City removed the action to this Court.  Rau asserts three claims in his Complaint:  excessive force under 42 U.S.C. § 1983, against Roberts only (Count 1); and assault (Count 2) and battery (Count 3), against both Roberts and the City.  The City moved to dismiss, arguing that it could not be held vicariously liable for Roberts's conduct, a question that hinges on whether his actions occurred within the scope of his employment.  The Court denied the Motion, concluding that Rau had alleged sufficient facts to state a claim for City liability.  Rau v. Roberts, Civ. No. 08-2451, 2009 WL 150954 (D. Minn. Jan. 21, 2009).  The early procedural posture of the case was key to the Court's ruling – while recognizing that the facts pleaded in the Complaint "tend to cast doubt that Roberts was acting in the scope of his employment," the Court could not say at that juncture that Rau's claims failed as a matter of law.  Id. at *2.

4

With discovery now completed and the facts set forth above laid bare, the City now moves for summary judgment, once again arguing that it cannot be held vicariously liable for Roberts's conduct.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

I.  **The evidentiary objections**

Before addressing the City's arguments, the Court must resolve Rau's objections to two types of evidence proffered by the City: (1) the Brooklyn Center police department's investigative report concerning the assault, and (2) Roberts's time records

from the Minneapolis police department. The former objection is well-founded, the latter is not.

### A. The police report

Rau first argues that the Brooklyn Center police report is hearsay. (See Mem. in Opp'n at 22-23.) What he really appears to challenge, however, is not the report itself, but rather Roberts's statements therein – indeed, it is the statements, not the report, that the City repeatedly cites in support of its Motion. (See, e.g., Def. Mem. at 3-9.) The problem, therefore, is one of hearsay within hearsay – "the report itself, and what [Roberts] told police." United States v. Taylor, 462 F.3d 1023, 1026 (8th Cir. 2006).

Regardless, assuming *arguendo* that the report is admissible, Roberts's statements therein are not. The City contends that the statements are not hearsay because they are the "statement[s] of a party" under Federal Rule of Evidence 801(d). (See Reply at 8 n.2.) But statements are non-hearsay only when they are *offered against the party who made them*. See Fed. R. Evid. 801(d)(2)(A) ("A statement is not hearsay if [t]he statement is offered against a party and is the party's own statement."). Here, the City seeks to offer Roberts's statements against *Rau*. Accordingly, they are beyond the ambit of Rule 801(d). See, e.g., United States v. Vasilakos, 508 F.3d 401, 410 (6th Cir. 2007); Boyce v. Eggers, 513 F. Supp. 2d 139, 143 (D.N.J. 2007); Means v. Cullen, 297 F. Supp. 2d 1148, 1151-52 (W.D. Wis. 2003).

For these reasons, the Court may not consider Roberts's statements in connection with the City's Motion. See, e.g., Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 923-24 (8th Cir. 2004).

6

B. **The time records**

The City has submitted Roberts's time records from the Minneapolis police department, which indicate that he stopped working at 8:00 pm on the night in question. (See Sautter Decl. Ex. 2.) Rau argues that the time records are hearsay (see Mem. in Opp'n at 23), but the City counters that they are business records admissible under Federal Rule of Evidence 803(6). The Court agrees with the latter argument. See United States v. Turner, 189 F.3d 712, 719-21 (8th Cir. 1999) (time records admissible under business-record exception to hearsay rule).[2]

## II. The Motion

Having disposed of Rau's evidentiary objections, the Court turns to the merits of the City's Motion. As noted above, the thrust of the Motion is that the City is not responsible for Roberts's actions because the assault occurred outside the scope of his employment.

Under Minnesota law, the City may be held liable for Roberts's alleged torts under a *respondeat superior* theory, but only if they occurred within the scope of his

---

[2] Although Rau has not done so, it could be argued that the City has failed to lay an adequate foundation for the admission of the time records under Rule 803(6). Yet, the business-record exception is broadly construed due to "the general trustworthiness of regularly kept records and the need for such evidence in many cases." Conoco Inc. v. Dep't of Energy, 99 F.3d 387, 391 (Fed. Cir. 1996). Hence, failure to lay the foundation for the admissibility of business records is not necessarily fatal, particularly where there exists no evidence that the records lack indicia of reliability. See, e.g., id. at 391-92; Munoz v. Strahm Farms, Inc., 69 F.3d 501, 503 (Fed. Cir. 1995); Pac. Serv. Stations Co. v. Mobil Oil Corp., 689 F.2d 1055, 1061-62 (Temp. Emer. Ct. App. 1982). Moreover, absent a properly laid foundation, the records still may be admitted under the residual, "catch-all" exception to the hearsay rule. See, e.g., United States v. Banks, 514 F.3d 769, 777-78 (8th Cir. 2008); United States v. Laster, 258 F.3d 525, 529-30 (6th Cir. 2001). Regardless, even if the Court declined to consider the time records, there exists other evidence – most notably Roberts's "deemed admissions" (see supra note 1) – establishing the hours he had worked on the date in question.

7

employment.  E.g., Frieler v. Carlson Mktg. Group, Inc., 751 N.W.2d 558, 583 (Minn. 2008); Hagen v. Burmeister & Assocs., Inc., 633 N.W.2d 497, 504 (Minn. 2001).  Where, as here, the tortious conduct at issue is an assault, employer liability exists only if "(1) 'the source of the attack is related to the duties of the employee,' and (2) 'the assault occurs within work-related limits of time and place.'"  Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc., 597 N.W.2d 905, 910 (Minn. 1999) (quoting Lange v. Nat'l Biscuit Co., 211 N.W.2d 783, 786 (Minn. 1973)).  Although Rau correctly notes that these are generally fact questions (see Mem. in Opp'n at 19), vicarious liability may be decided as a matter of law "when the evidence in the record is conclusive on all of the necessary elements or there is an absence of evidence to support a necessary element."  Hentges v. Thomford, 569 N.W.2d 424, 427 (Minn. Ct. App. 1997); accord, e.g., Tokheim v. Pollard, No. C1-00-1937, 2001 WL 1035020, at *5 (Minn. Ct. App. Sept. 11, 2001). That is the case here.

Taking the second Lange factor first, the record discloses no genuine issue that Roberts's attack occurred outside his "work-related limits of time and place."  The evidence clearly establishes that the assault occurred after Roberts had finished working for the day and had "clocked out" from the Minneapolis police department.  Further, it is undisputed that the assault took place in Brooklyn Center, not Minneapolis, and that Brooklyn Center police officers responded to Rau's 911 calls.  Roberts did not travel to The Perfect Carwash in connection with any law-enforcement duties, such as responding to a call for help or investigating a crime.  Rather, he was there with his wife, in his own vehicle, and on personal business.  Finally, he never attempted to place Rau under arrest

or otherwise invoke his authority as a police officer. Under these circumstances, the only reasonable conclusion is that the assault occurred outside the "time and place" of Roberts's employment. See, e.g., Oslin v. State, 543 N.W.2d 408, 414 (Minn. Ct. App. 1996) (no vicarious liability for employee's conduct at holiday party where party "occurred off the employer's premises, in a private establishment, after the employees had finished work"); cf. Hudson v. City of Minneapolis, Civ. No. 04-3313, 2006 WL 752935, at *5 (D. Minn. Mar. 23, 2006) (Ericksen, J.) (police officer who took lewd photographs of arrestee and sexually assaulted her in the back of his police car did so within work-related limits of time and place).

Rau makes little effort to rebut these facts, focusing instead on the first Lange factor, namely, whether the assault was "related to" Roberts's work as a police officer. (See Mem. in Opp'n at 13-19.) What little effort he does make to demonstrate that the assault occurred within work-related limits of time and place is unpersuasive.

First, he points out that Roberts said "[t]he police are already here" after calling 911. (Id. at 7-8.) But this statement, standing alone, does not establish that Roberts was acting within the scope of his employment. Roberts took no steps to stop Brooklyn Center police officers from responding to the 911 calls, nor did he otherwise invoke the authority with which police officers are imbued, like making arrests or issuing commands. Taken to its logical conclusion, Rau's argument would mean that vicarious liability exists any time an individual states that he is performing work for an employer –

even if no employment relationship in fact exists. The Court will not endorse such a result.[3]

Next, Rau notes that Roberts was wearing his Minneapolis police uniform, carrying a firearm and wearing a badge, at the time of the assault. (Id. at 7.) He also notes that Minneapolis police department policies require officers to act in a professional manner and carry certain items while in uniform. (Id. at 6-7, 18.) According to Rau, this means "the City recognizes that, as to the general public, when an officer is in uniform, he is working, on-duty, and otherwise acting in his capacity as a Minneapolis police officer." (Id. at 18.) The Court disagrees.

Simply put, an officer's clothing is too thin a reed upon which to base the scope-of-employment analysis. Were it otherwise, municipalities would be liable for any tortious conduct, no matter how unrelated to police business, committed whenever a police officer happened to be in uniform. Cities would in essence become insurers for their officers' conduct – no matter the time, location, motivation, or other circumstances – based on the fortuity of an officer donning his work garb. Such a result would be inconsistent with the underpinnings of *respondeat superior*, which impose liability on an employer only where the employee's act "is so connected with and immediately grows out of another act . . . imputable to the [employer] that both acts are treated as one

---

[3] The same logic applies to Roberts's alleged statement (and later denial) during the assault that he was on duty. See, e.g., Mahmood v. City of N.Y., No. 01 Civ. 5899, 2003 WL 21047728, at *3 (S.D.N.Y. May 8, 2003) (defendant's "identification [of himself] as a police officer has no bearing on whether he was acting within the scope of his" employment); Perez v. City of N.Y., No. 94 Civ. 2061, 1996 WL 103836, at *3 (S.D.N.Y. Mar. 8, 1996) ("[T]he act of identifying oneself as a police officer . . . does not automatically create liability for the City.").

indivisible tort." Fahrendorff, 597 N.W.2d at 910 (citation omitted) (emphasis deleted); accord, e.g., Hagen, 633 N.W.2d at 504 ("[W]e will not impose [vicarious] liability unless there is some connection between the tort and the business such that the employer in essence assumed the risk when it chose to engage in the business.").[4]

In the Court's view, what matters is not whether an officer is wearing his uniform at the time of the challenged conduct, but rather whether he uses in some fashion the authority with which that uniform cloaks him – only then is his conduct sufficiently related to his job that his employer should be liable for his actions. That is simply not true here.

The cases cited by Rau are consistent with the Court's interpretation of *respondeat-superior* liability for police officers. In Mary M. v. City of Los Angeles, 814 P.2d 1341 (Cal. 1991), the California Supreme Court held that a police department could be vicariously liable for a sexual assault committed by one of its officers. There, the officer, while on duty in a marked squad car, had pulled the plaintiff over for erratic driving, detained her, and performed a field sobriety test which the plaintiff failed. Id. at 1342-43. He then placed her in his squad car and drove to her home, after which he raped her. Id. In Primeaux v. United States, 181 F.3d 876 (8th Cir. 1999), an off-duty,

---

[4] The Court likewise rejects Rau's suggestion, alluded to vaguely in his Memorandum but pressed more forcefully at oral argument, that the scope-of-employment analysis turns on his *perception* that Roberts was acting as a police officer. This argument "erroneously centers on [Rau's] subjective reaction to [Roberts's] conduct rather than the nature of [his] activity." Pitchell v. Callan, 13 F.3d 545, 548-49 (2d Cir. 1994); accord, e.g., Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 476 (E.D.N.Y. 2002) (individual's "subjective reaction to [the officer's] conduct is not relevant"). Indeed, accepting such logic would lead to unreasonable results. For example, assume that someone stole a police officer's uniform and then committed an assault while wearing it. Under Rau's logic, the police department would be vicariously liable for the assault, as long as the victim believed the assailant was a police officer.

plain-clothed police officer was driving outside of his jurisdiction in a police vehicle. He encountered the plaintiff walking along the side of the road and offered her a ride – "the kind of assistance any citizen might offer." Id. at 882. A short while later, he raped her. The Eighth Circuit held that under those facts, no vicarious liability existed for the sexual assault. Id. And in Davis v. Lynbrook Police Department, 224 F. Supp. 2d 463 (E.D.N.Y. 2002), an out-of-uniform, off-duty officer, while driving his personal vehicle, "in essence[] effectuated a traffic stop" of the plaintiff by flashing his headlights, identifying himself as a police officer, and displaying his badge. Id. at 475. After the plaintiff drove off, he followed the plaintiff to his place of employment, again identified himself as a police officer, drew a weapon, pointed it at the plaintiff, ordered him to lie down, and asked him questions about where he worked and what he was doing. Id. at 468. Because such actions were consistent with an officer investigating criminal activity and effecting an arrest, they created a jury question on the police department's liability. Id. at 475-76; see also Huffman v. County of L.A., 147 F.3d 1054, 1058 (9th Cir. 1998) (no county liability where off-duty and out-of-uniform deputy shot and killed decedent with personal weapon during bar brawl, never identified himself as deputy, and gave no commands to decedent); Roe v. Humke, 128 F.3d 1213, 1216 (8th Cir. 1997) (police department not liable for off-duty, plain-clothed officer's sexual assault of plaintiff while riding all-terrain vehicles with her at his farm; officer "was neither actually acting in his official capacity or exercising his responsibilities pursuant to state law, nor purporting to so act").

In each of these cases, the key factor in the analysis was whether the defendant had invoked or used his authority as a police officer before engaging in the conduct in question, not whether he was on duty, in uniform, armed, or in a police vehicle. See, e.g., Davis, 224 F. Supp. 2d at 475 (liability "may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department"). In the case *sub judice*, there is simply no evidence that Roberts invoked his authority as a police officer before, during, or after the assault. For these reasons, the Court concludes that Rau has failed to show that Roberts's actions occurred within his work-related limits of time and place. Accordingly, the City cannot be vicariously liable for those actions.

Even assuming *arguendo* this were not the case, however, Rau's claims would still fail on Lange's first prong, because Roberts's actions were not "related to [his] duties" as a Minneapolis police officer. Generally speaking, an employee's conduct is related to the duties of his employment if his conduct is foreseeable to his employer. E.g., Frieler, 751 N.W.2d at 583-84; Hagen, 633 N.W.2d at 504. Foreseeability in this context means, in light of the employee's particular line of work, that the conduct "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." Fahrendorff, 597 N.W.2d at 912.

Here, Rau argues that assaults by police officers are common and well-documented in the case law and, accordingly, Roberts's actions were foreseeable. (See Mem. in Opp'n at 13-15.) But in Frieler, the Minnesota Supreme Court indicated that the foreseeability analysis is not that simple. There, the court found that the plaintiff had failed to show the foreseeability of sexual harassment, despite ample public knowledge

13

and abundant case law that harassment is "a common problem in American workplaces." 751 N.W.2d at 583. Relying on such broad generalities – a "sweeping rule" – was inappropriate, the high court ruled; instead, the focus must be on the *evidence* in each particular case. Id. ("Our cases clearly hold that a plaintiff must present some evidence that an employee's . . . misconduct was foreseeable to survive summary judgment on a claim of respondeat superior liability for an intentional tort."). In the absence of any such evidence in Frieler, the Minnesota Supreme Court affirmed the dismissal of the plaintiff's vicarious-liability claim.

Like in Frieler, Rau has failed to offer anything here besides a "sweeping" assertion that police officers frequently commit assaults. He has proffered no *evidence* to that effect, nor any other evidence that the City should have foreseen Roberts might commit an assault in connection with his employment as a police officer. As in Frieler, Rau simply has not satisfied his burden of demonstrating a genuine issue exists on foreseeability. See also Primeaux, 181 F.3d at 882 (no vicarious liability for sexual assault despite significant case law concluding that "it is sufficiently foreseeable to a government employer that . . . police officers will occasionally misuse their authority to sexually assault detainees").[5]

---

[5] The Court's conclusion is not inconsistent with its earlier opinion on the City's Motion to Dismiss. Although the Court recognized in that opinion the general foreseeability of assaults by police officers, it noted that foreseeability must be "analyzed based on the evidence presented in [each] particular case," and hence it could not resolve the issue at the motion-to-dismiss stage. Rau, 2009 WL 150954, at *3.

14

For all of these reasons, the Court concludes that Rau has failed to establish a basis for the City's vicarious liability. The circumstances surrounding the assault show that it was not "related to and connected with acts otherwise within the scope of [Roberts's] employment." Frieler, 751 N.W.2d at 583. Accordingly, the City's Motion will be granted and Counts 2 and 3 will be dismissed, insofar as they are alleged against the City.

## III. The remaining claims

### A. Count 1

In Count 1, Rau asserts an excessive-force claim under 42 U.S.C. § 1983, against Roberts only. The City moved for summary judgment on this claim, but Rau reiterated in his Memorandum in Opposition that the claim is pleaded against Roberts alone. (See Mem. in Opp'n at 10-12.)[6] Nevertheless, there exists a defect with this claim requiring its dismissal.

Rau's Complaint names Roberts as a Defendant, but it does not specify whether he is sued in his individual or official capacity. The distinction matters. As the Eighth Circuit has noted:

> Public servants may be sued under [42 U.S.C. §] 1983 in either their official capacity, their individual capacity, or both. . . . This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must *expressly and unambiguously state so in the pleadings*, otherwise, it will be assumed that the defendant is sued only in his or her official capacity. Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that

---

[6] There appears to be some dispute between the parties whether the City must indemnify Roberts in the event he is ultimately found liable under Count 1. (See Mem. in Opp'n at 10-11; Reply at 2-5.) This issue is not before the Court because indemnification is nowhere pleaded in the Complaint. The Court expresses no opinion on the parties' arguments concerning the same.

> they are being sued in their individual capacity will suffice to give proper notice to the defendants. *Absent such an express statement, the suit is construed as being against the defendants in their official capacity.*

Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (emphases added) (citations omitted); accord, e.g., Baker v. Chisom, 501 F.3d 920, 923-24 (8th Cir. 2007); Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998). This has been settled law in the Eighth Circuit for more than twenty years. See Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989).

Because Rau has failed to specify whether Roberts is sued in his individual or official capacity, the Court must assume that he has been sued in the latter only. Baker, 501 F.3d at 923; Johnson, 172 F.3d at 535. This assumption is fatal to Count 1. Liability exists for an official-capacity claim only if the challenged conduct resulted from an official policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1977); Nix, 879 F.2d at 433. Here, Rau has nowhere alleged facts indicating, or even suggesting, that Roberts's allegedly unlawful acts were intended to "implement or execute an unconstitutional policy or custom." Johnson, 172 F.3d at 535-36. In the absence of factual allegations indicating that such a policy or custom exists, the claim fails. Id.; see also D.E.S. v. Kohrs, 187 F.3d 641 (Table), 1999 WL 506121, at *2 (8th Cir. July 16, 1999) (unpublished) (affirming dismissal of official-capacity claims where plaintiff failed to plead unconstitutional policy or custom).

Notably, Rau expressly disavows bringing a Monell claim in his Memorandum, thereby suggesting he intended to bring an individual-capacity claim only. (See Mem. in Opp'n at 11.) But Rau cannot use his Memorandum to amend his ambiguous Complaint.

See, e.g., Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989); Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 959 (D. Minn. 2000) (Tunheim, J.). "[S]pecific pleading of individual capacity is required." Andrus *ex rel.* Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999); accord, e.g., Johnson, 172 F.3d at 535 ("[O]nly an express statement that [public officials] are being sued in their individual capacity will suffice."). Moreover, there is some suggestion in the Complaint that Count 1 is, in fact, an official-capacity claim. (See Compl. ¶ 4 ("At all times material to this complaint, Defendant Michael Roberts . . . was a duly appointed and presently acting police officer in the Police Department of the City of Minneapolis, *was acting under color of his official capacity*, and his acts were performed under color of law.") (emphasis added).) It is precisely this type of confusion that the Eighth Circuit sought to address by requiring specific pleading of individual versus official capacity.

For these reasons, the Court will dismiss Count 1.

### B. Counts 2 and 3 as against Roberts

With Count 1 dismissed, only Counts 2 (assault) and 3 (battery) of Rau's Complaint, insofar as they are alleged against Roberts, remain for resolution. Yet, the dismissal of Count 1 extinguishes the lone basis for this Court's subject-matter jurisdiction – the only basis for hearing the state-law claims was the supplemental-jurisdiction statute, 28 U.S.C. § 1367. With the federal claim dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(c)(3). See Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004). The Court will do so here and, accordingly, will remand Counts 2 and 3 to state court.

It might seem improper for the Court to exercise supplemental jurisdiction over Counts 2 and 3, as alleged against the City, and dismiss those claims on the merits while at the same time declining to exercise supplemental jurisdiction over those claims insofar as they are alleged against Roberts. This is permissible, however. See, e.g., Cindrich v. Fisher, 341 Fed. Appx. 780, 789-90 (3rd Cir. 2009) (Loken, C.J., Wollman & Murphy, JJ., sitting by designation) (citing Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 181 n.10 (3rd Cir. 1999)); Southerland v. Hardaway Mgmt. Co., 41 F.3d 250, 256-57 (6th Cir. 1994). Factors bearing on whether a court should exercise its discretion to consider some supplemental claims but not others include "judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Here, the Court concludes that these factors militate in favor of exercising jurisdiction over the state-law claims against the City, but not those against Roberts, because (1) the parties have fully litigated the former but not the latter, (2) if the Court were to remand all of the state-law claims to Hennepin County District Court, the City likely would file the exact same Motion for Summary Judgment it has filed here, resulting in a needless waste of time and judicial resources, and (3) on remand, all that will remain pending are the claims against Roberts – the City will no longer be a party to this action.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** as follows:

1. Defendant City of Minneapolis's Motion for Summary Judgment (Doc. No. 25) is **GRANTED**, and Counts 2 and 3 of Plaintiff's Complaint (attached to Doc. No. 1), insofar as they are pleaded against the City, are **DISMISSED WITH PREJUDICE**;

2. Count 1 of the Complaint, which the Court construes as an official-capacity claim against Roberts, is **DIMISSED WITH PREJUDICE**;[7] and

3. The remaining claims in the Complaint – namely, Counts 2 and 3, insofar as they are pleaded against Roberts – are **REMANDED** to the Hennepin County District Court. The Clerk of the Court shall mail a certified copy of this Memorandum Opinion and Order to the Clerk of the Hennepin County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: January 27, 2010

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[7] It is important to recognize that the Court has dismissed Count 1 only because it construes that Count as an official-capacity claim. The Court expresses no opinion as to whether, on remand, Rau may attempt to assert a Section-1983 claim against Roberts in his individual capacity.